FILED
2005 Nov-01 PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSITY OF ALABAMA BOARD OF TRUSTEES, } } } Plaintiff, } } v. } } NEW LIFE ART, INC., et al., } } Defendants. } | Case No.: 7:05-CV-0585-RDP |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

Pending before the court are the following motions: (1) Plaintiff The Board of Trustees of the University of Alabama's (the "University") Motion to Dismiss Counts I and IV of the Counterclaim (Doc. #20) filed on April 11, 2005; (2) Counterclaim Defendants Issues and Answers Network, Inc. and Ford Bubula & Associates' (the "Survey Defendants") Special Appearance, Motion to Dismiss, and Reservation of Defenses (Doc. #23) filed on April 12, 2005; and (3) President Witt and Dr. Gaston's Motion to Dismiss (Doc. #24) filed on April 13, 2005.  These motions assert various grounds pertaining to the adequacy of the Counterclaim (Doc. #3) filed by Defendants New Life Art, Inc. ("New Life Art") and Daniel Moore ("Moore") (collectively referred to as the "Moore Defendants") on March 22, 2005.

The court held a hearing in this case on October 27, 2005.  As discussed more fully below, the University's Motion to Dismiss and the Survey Defendants' Motion to Dismiss are due to be granted.  The Motion to Dismiss filed by President Witt and Dr. Gaston is due to be granted as to Counts I and IV of the Counterclaim and stayed as to Counts III and V of the Counterclaim.

Additionally, by agreement of the parties, Count II of the Counterclaim is due to be dismissed as to President Witt and Dr. Gaston.

## II. THE MOORE DEFENDANTS' COUNTERCLAIM

The Counterclaim filed by the Moore Defendants contains five separate counts. Count I is asserted against the University and the Survey Defendants and alleges violations of the Visual Artists Rights Act ("VARA" or the "Act"), 17 U.S.C. § 101, *et seq.* More specifically, the Moore Defendants seek damages against the University and the Survey Defendants under VARA for: (1) transferring, modifying and/or distorting paintings from the New Life Art web site for use in the survey; and (2) interfering with an artist's right of paternity.

Count II is asserted against the University, President Witt, and Dr. Gaston under the Lanham Act, 15 U.S.C. § 1051, *et seq.* The claim seeks a declaration and/or an injunction that no trademark rights exist with respect to the "trade dress," "color scheme," or "right to publicity" for the football uniforms worn by the University's players, and, therefore, Moore's artwork does not infringe upon any University trademark protected by the Lanham Act.

Count III is an Alabama state law claim for intentional interference with business relations and is brought against President Witt and Dr. Gaston. The count seeks damages for President Witt and/or Dr. Gaston's alleged intentional interference with Moore's ability to research, create, report, record, market, advertise, and sell his artwork by refusing to grant him special access to events; by interfering with his relationship with the Sports Information Department; by undermining his efforts to advertise his artistic products on broadcasts pertaining to the University; and by infringing upon his authority to use University images on coffee mugs/calendars in the absence of a license.

Count IV is an Alabama statutory claim asserted against the University and the Survey Defendants for alleged violations of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, *et seq*.  The allegations relating to this claim seek damages for distorting paintings from the New Life Art web site, thereby causing confusion as to the source of the artwork, and leading consumers to believe that the Moore Defendants sponsored or approved the discoloration.

Finally, Count V asserts retaliation in violation of the First Amendment of the United States Constitution.  The civil rights count is asserted by the Moore Defendants against President Witt and Dr. Gaston pursuant to 42 U.S.C. § 1983.  The Moore Defendants claim that President Witt and Dr. Gaston's position that they must license all artwork depicting various University images or be denied any facilitation in artistic endeavors interferes with Moore's First Amendment rights of freedom of speech, expression, and press.  The retaliatory acts about which the Moore Defendants complain include:

(1)  revoking press passes;

(2)  disallowing access to football events, personnel, and other information critical to Moore's art research;

(3)  denying the ability to set up a sales booth on the "Quad" for home football games;

(4)  blackballing Moore's ability to advertise in University publications and broadcasts;

(5)  distorting and modifying Moore's artwork by changing helmets and uniforms to green and falsely attributing the modified work to Moore;

(6)  blocking the previously arranged loan of Moore's original painting "The Sack" (which he had previously donated to the Bryant Museum) from being exhibited when Moore received an award for being named the "2005 Sports Artist of the Year"; and

(7)     refusing to respond to Moore's efforts to discuss all of these actions.

### III.    STANDARD OF REVIEW

The motions to dismiss challenge the sufficiency of the counts alleged by the Moore Defendants in their Counterclaim under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A court may dismiss a cause of action under Rule 12(b)(6) only if it appears beyond a doubt that the non-moving party can prove no set of facts in support of his claims which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [pleading] as true and construe the facts in a light most favorable to the non-moving party."  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Further, "[a claim] may not be dismissed because the [non-moving party's] claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

"The threshold of sufficiency that a [claim] must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.'"  *Ancata v. Prison Health Serv., Inc.* 769 F.2d 700,

4

703 (11th Cir. 1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

**IV.     ANALYSIS**

    **A.     The University's Motion to Dismiss Count I of the Counterclaim**

In Count I of their Counterclaim, the Moore Defendants assert violations of VARA based upon the survey performed by the Survey Defendants at the request of the University. The University's stated purpose behind the web site survey was to determine, before filing a lawsuit, whether there was a likelihood of confusion as to the source, authorization, or approval of prints featured on the Moore Defendants' web site.

VARA defines a "work of visual art" in relevant part as:

> (1) a painting, drawing, [or] print, . . . existing in a single copy, [or] in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author . . . [.]

17 U.S.C. § 101(1). Excluded from the definition of "work of visual art" are:

> (i) any poster, . . . diagram, model, applied art, . . . data base, electronic information service, electronic publication, or similar publication;
>
> (ii) any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container;
>
> (iii) any portion or part of any item described in clause (i) or (ii)[.]

*Id.* § 101(A). Also excluded from VARA protection are "any reproduction, depiction, [or] portrayal" of a "work of visual art," and, according to the statute's very language, any "reproduction, depiction, [or] portrayal" is not a "destruction, distortion, mutilation, or other modification" of the artwork. 17 U.S.C. § 106A(c)(3).

While the Eleventh Circuit has not yet addressed VARA in any reported decision, the Second Circuit has. According to the Second Circuit in *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 84 (2d Cir. 1995), analysis of whether a particular work falls under the protection of VARA is a two-step process. First, the claimed work must meet the statutory definition of a "work of visual art." *Id.* Second, the claimed work must not fall within one of the Act's noted exceptions, such as, for example, "electronic publication or similar publication." *Id.* The court finds the Second Circuit's approach to evaluating coverage under VARA to be a faithful interpretation of the statute and adopts it here.

In conducting the study, the Survey Defendants used the electronic images of the Moore Defendants' art that were located on the latter's web site. More specifically, the images on the Moore Defendants' web site are photographs (or scanned reproductions) of artwork that have been converted to digital files and uploaded onto the web site. As the electronic reproductions found on the survey web page are neither original single copy paintings, drawings, or prints, and are not part of a limited edition of 200 (or fewer) signed and numbered copies,[1] they do not constitute "works of visual art." Accordingly, the Moore Defendants cannot satisfy the first part of the VARA test. As noted by one court, "the existence of rights under VARA depends on precisely these distinctions between an original artwork and various reproductions of it. Congress made just such distinctions when it defined works protected by VARA, and the plaintiff cannot evade the consequences by using

---

[1] The court notes that during the hearing, counsel for the Moore Defendants argued that rather than posting the electronic images of the art on the survey web site, the Survey Defendants sent CDs containing the images to the survey participants. Even if this did occur, a CD of electronic images is unlike an original or limited edition painting, drawing, or print. It is not a work of visual art as defined by Congress, and therefore, is not afforded any protection by VARA.

imprecise language." *Silberman v. Innovation Luggage, Inc.*, No. 01-Civ-7109 (GEL), 2003 WL 1787123, at *5 (S.D.N.Y. Apr. 3, 2003).

Similarly, the Moore Defendants' claim fails the second part of the VARA coverage analysis because "electronic information service, electronic publication, or similar publication" as well as "reproductions" are expressly beyond VARA's reach. The web site images fall within both of these categories as they are electronic reproductions (*i.e.*, they are located on the web site) of reproductions (*i.e.*, the electronic reproductions are of prints of the original artwork). Therefore, as VARA does not extend to either electronic media or copies of art, the subjects of the survey are not covered by that legislation.

The language of, and the congressional purpose behind, VARA are clear and unambiguous. The Moore Defendants' urging that the court should take a more expansive view of VARA and enlarge its expressly limited scope, is contrary to the statute's plain language.[2] Accordingly, the court will dismiss Count I of the Moore Defendants' Counterclaim with prejudice.[3]

---

[2]As the plain language of VARA makes crystal clear that it does not apply here, the court need not look to the legislative history of the statute. But, to be sure, the legislative history of VARA demonstrates a congressional intent to limit the scope of the Act to "certain carefully defined types of work," because "when an original of a work of visual art is modified or destroyed, it cannot be replaced. This is not the case when one copy of a work produced in potentially unlimited copies is altered . . . . **The bill recognizes the special value inherent in the original or limited edition copy of a work of art.**" H.R. Rep. No. 514, 101st Cong., 2d Session at 13-16, 1990 U.S.C.C.A.N. 6915, 6919-22 (citations omitted) (emphasis added).

[3]Because the court determines that VARA does not cover the allegations of the Moore Defendants, the court does not reach the other bases for dismissing Count I including the potential application of other exceptions to coverage under VARA and the fair use doctrine to the artwork involved in the survey.

B.     The University's Motion to Dismiss Count IV of the Counterclaim

Count IV of the Moore Defendants' Counterclaim also asserts claims related to the use of Moore's art in the survey and alleges violations of the ADTPA. Dismissal of the ADTPA claim is appropriate due to the Moore Defendants' lack of standing and the survey's non-profit focus.

The ADTPA provides a private right of action to "consumers." Ala. Code § 8-19-10(a). "Consumer" is defined as "[a]ny natural person who buys goods or services for personal, family or household use." Ala. Code § 8-19-3(2).

Defendant New Life Art is not a consumer within the meaning of the ADTPA as it is not a "natural person." Moreover, neither Defendant New Life Art nor Defendant Moore has alleged that either one bought goods or services for personal, family, or household use from the survey web site. (Doc. #3 ¶¶ 12, 22). In fact, Defendant Moore's pleadings make clear that he only learned about the survey web site after he was notified of its existence by a participant in the survey. (*Id.* ¶ 12). Furthermore, Moore's assertion at the hearing that he meets the "consumer" definition because, even though he did not buy any goods related to the survey, he has bought goods or services for personal, family or household use from other persons and entities, is simply off the mark. The language of Ala. Code § 8-19-10, based on any fair reading, requires that only a consumer damaged by the deceptive trade practice at issue may recover monetary damage. To permit a person who is merely a consumer of products generally to sue for an act or practice that did not affect him as a consumer would be to open the floodgates for litigation under § 8-19-10. It would also be wholly inconsistent with the jurisprential standing requirements of this and other courts.

Because it is apparent that the Moore Defendants do not have standing to pursue their claims under the ADTPA, it is not necessary to reach the issue of whether the survey constitutes a practice

made "in the conduct of any trade or commerce."[4]  However, the limited and non-commercial purpose of the survey web site makes it highly unlikely that it qualifies as a practice "in the conduct of any trade or commerce" under the ADTPA.

The term "trade or commerce" as used in the ADTPA, is defined to include, but not be limited to, "the advertising, buying, offering for sale, sale or distribution or performance of any service or goods, and any other article, commodity or thing of value wherever situated and shall include any trade or commerce affecting the people of [Alabama]." Ala. Code § 8-19-3(8).  In sharp contrast with this definition, the survey web site did not involve the sale or purchase of any goods, did not advertise any goods, did not open itself up to the general public, and did not perform any services on behalf of the survey participants.  (Doc. #3 ¶ 12).  Accordingly, the survey web site does not fall under the definition of "trade or commerce" within the meaning of the ADTPA.

Therefore, the court concludes that as a result of their lack of standing and the non-commercial nature of the survey, the Moore Defendants cannot prove any set of facts to support an actionable claim under the ADTPA.  Accordingly, the court will dismiss Count IV of the Counterclaim.

    C.    **The Survey Defendants' Motion to Dismiss**

The Survey Defendants' Motion to Dismiss adopts by reference the bases and rationale of the University's Motion to Dismiss; therefore, for the reasons stated above, their motion is due to be granted.

---

[4]Similarly, the court does not reach the preemption defense raised by the University.

### D. President Witt and Dr. Gaston's Motion to Dismiss

All five counts of the Counterclaim are asserted against President Witt and Dr. Gaston. (Doc. #3). By agreement of the parties, President Witt and Dr. Gaston are due to be dismissed from Count II of the Counterclaim - seeking a declaratory judgment and/or injunction under the Lanham Act - because it is undisputed that, individually, they have no right to any trademark asserted in this litigation nor any other rights under the Lanham Act.

As to Counts I and IV of the Counterclaim, which allege claims under VARA and ADTPA, President Witt and Dr. Gaston have adopted the bases and rationale of the University's Motion to Dismiss; therefore, those counts are due to be dismissed against President Witt and Dr. Gaston for the same reasons discussed above.

As to Counts III and V of the Counterclaim, alleging, respectively, intentional interference with business relations under Alabama state law and First Amendment retaliation through the vehicle of § 1983, President Witt and Dr. Gaston have asserted generally the defense of "qualified immunity." (Doc. #25, at 5). Counsel for President Witt and Dr. Gaston clarified at the October 27, 2005 hearing that the immunity defense they assert is actually two-fold: they assert the defense of qualified immunity as to the Moore Defendants' federal § 1983 claims articulated in Count V; and they assert the defense of state law discretionary function immunity as to the Moore Defendants' state law claim for intentional interference with business relations found in Count III. Considering the different elements of proof for each type of immunity, and given that the brief in support of President Witt and Dr. Gaston's Motion to Dismiss outlines only their qualified immunity defense to the federal claims, the court finds that additional briefing is necessary on the issue of state law discretionary function immunity before the court can properly consider that defense.

Before the court considers the immunity issues, however, the parties have requested that this case be partially stayed and they be given permission to conduct limited discovery on the issues underlying the Lanham Act claims alleged in both the University's original Complaint and Count II of the Moore Defendants' Counterclaim. The court has carefully considered such a request given that President Witt and Dr. Gaston have asserted qualified immunity, and typically, "qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004). The court finds that the requested limited discovery would not unnecessarily burden President Witt or Dr. Gaston given that all parties agree that they are due to be dismissed from Count II of the Counterclaim, and therefore they are no longer required to defend against any Lanham Act allegations.

Accordingly, the court will stay the consideration of the immunity issues, and will stay all other discovery in this case to allow the parties to proceed with the limited discovery outlined above.

## V.   CONCLUSION

Because the Moore Defendants can prove no set of facts to support Counts I and IV of their Counterclaim, the Motions to Dismiss filed by the University and the Survey Defendants are due to be granted, and President Witt and Dr. Gaston's Motion to Dismiss is due to be granted in part. By agreement of the parties, Count II of the Moore Defendants' Counterclaim is due to be dismissed as to President Witt and Dr. Gaston. The court will stay consideration of President Witt and Dr. Gaston's Motion to Dismiss as it relates to Counts III and V of the Counterclaim, and will stay all discovery in this case with the exception of the limited discovery requested by the parties concerning

the claims and counterclaims under the Lanham Act. The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this   1st   day of November, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE