FILED
2006 Apr-10 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNIVERSITY OF ALABAMA BOARD OF TRUSTEES, } } } | |
| Plaintiff, } } | Case No.: 7:05-CV-0585-RDP |
| v. } } | |
| NEW LIFE ART, INC., et al., } } | |
| Defendants. } | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Pursuant to the court's ruling (Doc. #42) on November 1, 2005, the parties are currently engaging in limited discovery concerning the claims and counterclaims made under the Lanham Act; the court has stayed the other portions of this litigation.  Pending before the court is Plaintiff University of Alabama Board of Trustees' Motion to Compel Discovery from Defendants (Doc. #48) filed on March 6, 2006, along with a supporting brief and evidence.  Defendant New Life Art, Inc. and Daniel Moore filed their response in opposition (Doc. #51) on March 11, 2006.  Plaintiff filed its reply (Doc. #55) on March 24, 2006.  For the reasons discussed below, Plaintiff's Motion to Compel Discovery from Defendants is due to be granted subject to the entry of a mutually acceptable protective order.

### II.  ANALYSIS

Plaintiff's motion seeks to compel Defendants to disclose the names of photographers from whom they received reference photographs used in connection with the creation of New Life Art

prints portraying various images of University of Alabama football.[1]  As sworn to by Defendant Moore, sources from whom Defendants have received photographs include *The Birmingham News*, *The Tuscaloosa News*, the UA Sports Information Department, and the Bryant Museum.  (Doc. #51 at Ex. 2 at 3).  Initially, Plaintiff sought to discover by way of document production, the reference materials shared by the photographers with Defendants.  However, as most recently explained by Defendant Moore, he entered into "confidentiality agreements" with these persons, and pursuant to those oral understandings, routinely discarded the digital references from the "trash can" on his computer desktop.  (Doc. #51 at Ex. 2 at 3).

Defendants have provided Plaintiff with some digital files and hundreds of photographic prints and slide transparencies shot by Defendant Moore.  (*Id.*)  Defendants object, however, to revealing the photographers' names based upon the qualified reporter/journalist privilege regarding confidential sources.  Defendants also argue that the information lacks relevancy and is not discoverable for that additional reason.

### A. Qualified Reporter/Journalist Privilege

In a case relied upon by both sides in their briefs, the Third Circuit in *In re Madden*, 151 F.3d 125, 131 (3d Cir. 1998) fashioned the test for the qualified reporter/journalist privilege as:

> To summarize, we hold that individuals claiming the protection of the journalist's privilege must demonstrate the concurrence of three elements: that they: (1) are engaged in investigative reporting; (2) are gathering news; and (3) possess the intent at the inception of the news gathering process to disseminate the news to the public.

*Id.*  Similar to this case, *In re Madden* involved the asserted application of the journalist privilege

---

[1] The court concludes that the discovery of the photographers' names sufficiently falls within the scope of Plaintiff's Interrogatory No. 3 and is properly before the court on Plaintiff's Motion to Compel. (*See* Doc. #49 at 5).

"beyond those employed by the traditional media." *Id.* at 128.

In arriving at its holding, the Third Circuit acknowledged that "[t]o date, only one other court of appeals has fashioned a test to answer the question of who has status to invoke a journalistic privilege." 151 at 128 (citing *von Bulow v. von Bulow*, 811 F.2d 136, 142 (2d Cir.1987)). The Third Circuit analyzed the Second Circuit's *von Bulow* decision in great detail and determined that a showing of investigative reporting was critical to asserting a journalist privilege. In determining that the privilege did not apply, the Third Circuit emphasized that plaintiff "Madden's activities in this case cannot be considered "reporting," let alone "investigative reporting." *Id.* at 130. This court reaches a similar conclusion here—while Defendants go to great lengths to establish the indicia of Defendant Moore's role as a reporter (*i.e.*, his extensive press credentials "issued by the University of Alabama for working press and official business only") (*see, e.g.,* Doc. #51 at 2), the evidence in the record falls short of demonstrating that Defendant Moore has ever functioned as a traditional press person, much less an investigative reporter.

Moreover, the case of *Miller v. Transamerica Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980), which is binding precedent in this court, would appear to make it even more difficult for Defendants to claim the privilege. Although not directly on point, in *Miller*, the former Fifth Circuit acknowledged generally that "each jurisdiction with an interest in having its law applied limits the reporter's privilege to the protections afforded by the First Amendment" and held that:

> [A] reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants, however, the privilege is not absolute and in a libel case as is here presented, the privilege must yield.

The court's reading of the reporter's privilege as articulated in *Miller* is therefore limited to the protection against disclosure of the names of "confidential informants" by traditional reporters. That

case does not apply here and Defendants have not pointed to the existence of any binding case in which the journalist privilege has been applied to persons outside of the traditional reporting and/or investigative reporting role.

The court's conclusion that the journalist privilege does not protect against disclosure of the information sought by Plaintiff is further bolstered by the general proposition that courts should narrowly apply privileges. As recognized in *In re Madden*:

> [T]estimonial exclusionary rules and privileges are not favored. Indeed, the Supreme Court has not shown enthusiasm for the creation of constitutional privileges because these privileges "contravene a fundamental principle of our jurisprudence that the public has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). Such privileges should not be "lightly created or expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

151 F.3d at 128; *see also Miller*, 621 F.2d at 725 ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances.") (citing *Herbert v. Lando*, 441 U.S. 153, 175 (1979)). Under the circumstances presented here, the court finds no basis for applying the journalist privilege.

### B. Discovery Pursuant to Rule 26 of the Federal Rules of Civil Procedure

As noted in *In re Madden*:

> If no claim of privilege applies, a non-party can be compelled to produce any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

This legal standard applies equally to discovery sought from a party. Moreover, as described by the Supreme Court, under Rule 26, discovery is generally "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

While at this stage of the litigation the court is not prepared to make an evidentiary ruling in advance that the information sought by Plaintiff is relevant, the standard on discovery does not require an absolute showing of relevancy. The alternative (and less burdensome) test for the movant is to show that the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Plaintiff has met this less stringent test. More specifically, to the extent that the court's review of the competing Lanham Act claims turns upon a determination of the nature and degree to which Defendants' prints have been changed or "transformed" from the photo references supplied by the photographers with whom Defendants dealt (*see* Doc. #55 at 8-9), then the names of those photographers are calculated to lead to the discovery of admissible evidence. Those persons may be able to supply copies of the digital photos shared with Defendants, whose own copies have since been discarded from Defendants' computerized trash can.

### III.   CONCLUSION

As explained above, the qualified reporter/journalist privilege does not protect against the disclosure of the photographs because Defendant Moore has not demonstrated to the court that he is engaging in a traditional investigative reporting role. Moreover, the discovery sought is properly discoverable under the terms of a mutually acceptable protective order because Plaintiff has sufficiently articulated how the information is, at a minimum, reasonably calculated to lead to the discovery of admissible evidence. The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ____10th____ day of April, 2006.

                                                  **R. DAVID PROCTOR**
                                                  UNITED STATES DISTRICT JUDGE