FILED

2008 Apr-30  PM 05:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **THE UNIVERSITY OF ALABAMA BOARD OF TRUSTEES,** ) ) ) ) | |
| ) | Civil Action Number |
| Plaintiff, ) | **7:05-cv-00585-UWC** |
| ) | |
| **vs.** ) | |
| ) | |
| **NEW LIFE ART, INC., et. al.,** ) | |
| ) | |
| Defendants. | |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN
PART COUNTER-DEFENDANTS' MOTION TO DISMISS**

Before the Court is a Motion to Dismiss Counter-Plaintiffs' § 1983 claims

filed by Counter-Defendants President Witt and Dr. Gaston based upon the

defense of qualified immunity.  Counter-Defendants also seek to have dismissed

Counter-Plaintiffs' claims for intentional interference with business relations,

violations of the Visual Artists Rights Act, 17 U.S.C. § 106A, declaratory relief

under the Lanham Act, § 15 U.S.C. 1051 *et seq*., and violations of Alabama

Deceptive Trade Practices Act, § 8-19-1 *et seq*.  For the reasons outlined below,

Counter-Defendants' Motion to Dismiss (Doc. 25) is due to be GRANTED, except

with respect to the claim for Intentional Interference with Business Relations.  The

Motion to Dismiss the counterclaim for Intentional Interference with Business Relations is due to be DENIED.

## THE CLAIMS AND RELEVANT FACTS

On March 18, 2005, the University of Alabama filed a complaint against New Life Art, Inc. and Daniel Moore alleging, *inter alia*, breach of contract, unfair competition, and trademark violations under the Lanham Act, 15 U.S.C. § 1051 *et. seq.*, arising out of Daniel Moore's very popular artwork, which depicts historic Alabama sports moments and popular Alabama players and coaches. (*See* Compl. Doc. 1).

In their answer, Defendants (hereinafter "Counter-Plaintiffs") counterclaimed for, *inter alia*, violation of the Visual Artist's Rights Act, 17 U.S.C. § 106(A), Declaratory Relief under the Lanham Act, intentional interference with business relations, violations of the Alabama Deceptive Trade Practices Act, and violations of 42. U.S.C. § 1983.

In these counterclaims, Counter-Plaintiffs specifically named, *inter alia*, Robert E. Witt, who serves as the President of the University of Alabama, and Finus Gaston, who serves as the Senior Associate Athletic Director (Finances) for the University of Alabama.

Essentially, Counter-Plaintiffs claim that the circumstances giving rise to this case actually arose in 2002 when Dr. Finus Gaston informed Daniel Moore that all art prints featuring the University of Alabama Football Team were subject

to licensing, even if a recognized University of Alabama trademark was not shown in the artwork or on the periphery of the print.  (Doc. 3, at 15.) Counter-Plaintiffs attempted to persuade Dr. Gaston that Moore's artistic works did not infringe upon any of the University's recognized and legally protected trademarks.  (*Id.*)

Additionally, Counter-Plaintiffs repeatedly wrote to Robert E. Witt and the Board of Trustees of the University of Alabama to explain that Moore's artwork documents and records historic moments and events in Alabama football and thus was protected under the First Amendment of the United States Constitution.

As a result of this disagreement, however, Moore had his press/media and sideline credentials withheld.  Among other restrictions, the University also forbade him from advertising on University football programs, radio broadcasts of games, coaches' shows and University influenced magazines and publications.

Essentially, Counter-Plaintiffs claim that the University has attempted to coerce Moore into licensing all artwork depicting Alabama football using these restrictive tactics, which, in turn, interfere with his rights under the First Amendment.  Finally, Counter-Plaintiffs allege that the Counter-Defendants attempted to alter, distort and affect his artwork, an act that was intentionally or recklessly aimed at affecting his honor and reputation as an artist, when they transferred digital versions of Moore's paintings and prints on the website of New Lief Art, Inc. and modified them so that all jerseys and helmets of Alabama football players depicted therein were changed from crimson to green. (Doc. 3 at

15-16.)  Counter-Defendants claim that this was for the purpose of conducting a

survey regarding "likelihood of confusion," which plays such a central role in the

trademark analysis underlying this lawsuit.

On April 13, 2005, President Witt and Dr. Gaston filed their Motion to

Dismiss, alleging that (1) Counter-Plaintiffs' Counts I-IV are barred by the

doctrine of qualified immunity, (2) Counter-Plaintiffs' § 1983 claims fail as a

matter of law, and (3) their VARA and ADTPA claims are due to be dismissed as

well.  (Doc. 25.)  On April 20, 2005, the Counter-Plaintiffs filed their Opposition

(Doc. 27), which was almost entirely devoted to the issue of qualified immunity.

For purposes of clarity, the Court will address each of Counter-Plaintiffs'

counterclaims in turn and only as they relate to President Witt and Dr. Gaston's

Motion to Dismiss.

## CONTROLLING LAW

### A. Qualified Immunity under § 1983.

In *Storck v. City of Coral Springs*, 354 F.3d 1307 (11th Cir. 2003), the

Eleventh Circuit stated that "[q]ualified immunity provides protection for

government officials performing discretionary functions and sued in their

individual capacities as long as their conduct violates no 'clearly established

statutory or constitutional rights of which a reasonable person would have

known.'" *Id.* at 1313 (quoting *Lassiter v. Ala. A & M Univ., Bd. Of Trustees*, 28

F.3d 1146, 1149 (11th Cir. 1994)).

"A government official proves that he acted within his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

If a public official has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity should not apply. *Storck*, 354 F.3d at1314.  In doing so, the Eleventh Circuit applies the Supreme Court's two part test, which is as follows:

> (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?, and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established."

*Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## B.  Intentional Interference with Business Relations

"[I]t is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a stranger to the contract with which the defendant allegedly interfered." *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002) (quoting *Bellsouth Mobility, Inc. V. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001)).  "[A] party to a contract cannot, as a matter of law, be liable for tortious interference with a contract." *Lolley v. Howell*, 504 So.

2d 253, 255 (Ala. 1987).

"A corporate officer or employee . . . may individually commit the tort of intentional interference with business or contractual relations to which the corporation or employer is a party. *Pegram v. Hebding,* 667 So. 2d 696, 701 (Ala. 1995). However, "an action cannot be maintained against such an officer or employee of a corporation unless that person was acting outside the scope of employment and with actual malice at the time of the interference. *Id.* at 701 (citing *Hickman v. Winston County Hospital Board,* 508 So. 2d 237 (Ala.1987)).

### C. Visual Artists Rights Act ("VARA"),17 U.S.C. § 106A

Under 17 U.S.C. §106A(c)(3), reproductions, depictions, portrayals, and electronic portrayals of original art works are expressly excluded from the protection afforded to original pieces of art under VARA. *See* 17 U.S.C. 101, 106A(c)(3).

## ANALYSIS

### A.  Violation of §1983 (Count V of the Counterclaim) and Qualified Immunity[1]

Counter-Plaintiffs claim that, after years of mutual understanding as to the promotion and use of Moore's artwork, the University and the Athletic Department, under the leadership of President Witt and Dr. Gaston respectively,

---

[1] Under *Saucier v. Katz*, 533 U.S. 194, 201 (2001), in any analysis of the presence *vel non* of qualified immunity, all facts must be "taken in the light most favorable to the party asserting the injury." *Id.*

engaged in a scheme of coercion to strong arm Moore and New Life Art, Inc,. into licensing all future artwork depicting the Alabama uniform.  Counter-Plaintiffs further allege that this scheme of coercion, whereby Moore was denied University access, had the effect of chilling Moore's First Amendment right to free speech, free expression, and free press.  (Doc. 27, at 4.)

However, even viewing all of Counter-Plaintiff's allegations in a light most favorable to them, the Court is unpersuaded that the alleged scheme violated any of Moore's constitutional rights.

Foremost, it is clear that the objective circumstances surrounding the actions taken by Dr. Gaston or President Witt compel the conclusion that they were undertaken within the scope of their respective authority.  *See Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).  Counter-Plaintiffs have alleged no facts implying anything other than a vigorous attempt on behalf of Counter-Defendants to protect the trademarks of the University.

To be sure, it is unclear whether these trademarks are protectable *vel non* to the extent the University seeks; however, such actions are directly within the scope of traditional University functions.  Dr. Gaston's position that the University would no longer grant access to the University's football program if Moore refused to comply with licensing agreements is not overreaching, nor is President Witt's inaction in response to Moore's letters somehow outside of the scope of his discretion as University President.  Moreover, Counter-Plaintiffs have pointed to

no evidence suggesting otherwise.  Accordingly, Counter-Defendants have met their initial burden of showing that qualified immunity is applicable.

If a public official has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity should not apply.  *Storck*, 354 F.3d at1314.  Here, Counter-Plaintiffs have failed to show (1) that Moore was engaged in a constitutionally protected activity and (2) that the state official's actions were substantially motivated against the exercise of that constitutional activity.  *See e.g., Keenan v. Tejada*, 290 F.3d 252 (5th Cir. 2002).

### (1) Moore was not engaged in constitutionally protected activity

There is no question that the art at issue in this case is well-renowned and is protected expression under the First Amendment of the United States Constitution. *See Miller v. California*, 413 U.S. 15 (1973).  However, that constitutional right is not at the core of the controversy between the University and Moore.  Foremost, Counter-Plaintiffs have presented no evidence that President Witt engaged in any other action than failing to respond to Moore's letters.  As Counter-Defendants rightly contend, there is no constitutional right to a favorable response to correspondence.

Second, Counter-Plaintiffs have alleged that Dr. Gaston denied Moore access to the Alabama University football program, including foreclosing his access to the sidelines during football games. (Doc. 27, at 16.)  They claim that

this denial had the effect of chilling Moore's freedom of expression in creating constitutionally protected artwork.  (Doc. 27, at 12.)  However, Counter-Plaintiffs have pointed to no controlling law suggesting that access to information, journalistic or otherwise, is a constitutionally protected activity.  On the contrary, Counter-Defendants point to persuasive authority, which states that "there is no general First Amendment right to access to all sources of information within governmental control."  *Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001) (citing *Houchins v. KQED, Inc.,* 438 U.S. 1, 9 (1978)).  The Court is persuaded by Counter-Defendants' argument.

In support of their contention, Counter-Plaintiffs point to the Eleventh Circuit's decision in *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005) as standing for the proposition that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights.  *Bennett*, 423 F.3d at 1255.   Counter-Plaintiffs claim that retaliation is precisely what is occurring here, i.e., "that we had a constitutionally protected right that we were ordered to give up and told if you do not give it up, you will suffer the consequences of us pulling everything we have given to you."  (Doc. 84 at 60.)

Although compelling, Counter-Plaintiffs' reliance on *Bennett* misses the mark because it is distinguishable from the case at bar.  In *Bennett*, plaintiffs, a group of Georgia voters who supported a referendum that would have established a county-wide police force and thereby greatly diminished the power of the

Forsyth County Sheriff's Department, claimed the Sheriff's department engaged in a campaign of retaliation against plaintiffs in order to deter them from campaigning for the referendum. *Bennett*, 423 F.3d at 1249. Specifically, plaintiffs in *Bennett* alleged that Sheriff Hendrix and other deputies surveilled plaintiffs' homes and businesses, set up roadblocks near their homes, issued false traffic citations, and accessed government databases to obtain confidential information on them. *Id.* The Sheriff's Department also mailed out 35,000 flyers to residents of the county calling plaintiffs "the same type of criminals that terrorize Forsyth County." *Id.*

Quite simply, this type of systematic retaliation designed to intimidate citizens from exercising their freedom of speech bears little resemblance to the "retaliation" complained of in the case *sub judice*. In *Bennett*, the Eleventh Circuit held that the Sheriffs "were on notice and had 'fair warning' that retaliating against the plaintiffs for the support of the referendum would violate plaintiff's constitutional rights and, if the plaintiffs allegations were true would lead to liability under §1983." *Id.* at 1256. The same cannot be said for the Counter-Defendants here. From the Dr. Gaston's or University's point of view, which is the focus of the Eleventh Circuit's analysis in *Bennett*, there is no constitutionally protected right to have access to the University's football program and, therefore, the Counter-Defendants could not have been on notice that their actions would result in § 1983 liability.

*(2) President Witt and Dr. Gaston's actions were not substantially motivated against the exercise of that constitutional activity.*

Even assuming *arguendo* that the constitutionally protected activity at the core of the present controversy is in fact Moore's artistic depictions–and not the denied access–and that the University's denial of this access chilled him from engaging in that protected activity, Counter-Plaintiffs have failed to show that the adverse actions were substantially motivated against the Plaintiff's exercise of those rights.  *See Keenan v. Tejada*, 290 F.3d 252 (5th Cir. 2002).  On the contrary, the overwhelming evidence, even viewed most favorably to Counter-Plaintiffs, shows that the substantial motivating factor was the protection of the University's putative trademark rights in the use of its indicia and trade dress.

Accordingly, Counter-Defendants have successfully shown that they are entitled to qualified immunity for Counter-Plaintiffs' § 1983 claims.

**B.  Intentional Interference with Business Relations (Count III of the Counterclaim)**

The law in Alabama is clear that a claim of tortious interference with contractual relations requires a plaintiff to establish that the defendant is a 'third party,' i.e., a stranger to the contract with which the defendant allegedly interfered. *See  Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002) (quoting *Bellsouth Mobility, Inc. V. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001)).

In Counter-Plaintiffs' response to this issue (Doc. 27), which is so cursory that it nearly convinces the Court that they have abandoned the claim altogether,

they simply state that they presented "well-pleaded causes of action for . . .
Intentional Interference with the Counter-plaintiffs' business relations."   They
also point to the case of *Pegram v. Hebding,* 667 So.2d 696, 701 (Ala.,1995),
which states that "a corporate officer or employee . . . may individually commit the
tort of intentional interference with business or contractual relations to which the
corporation or employer is a party.  *Pegram v. Hebding,* 667 So.2d 696, 701
(Ala.,1995).  Such an action can only be maintained against an officer or employee
of a corporation if that person was acting outside the scope of employment and
with actual malice at the time of the interference.  *Id.* at 701 (citing *Hickman v.
Winston County Hospital Board,* 508 So. 2d 237 (Ala.1987)).

      Counter-Plaintiffs fail in proving that President Witt and Dr. Gaston are
strangers to the business relationship between Moore and the University.
However, Counter-plaintiffs have successfully plead that Counter-Defendants
have "issued influence and pressure towards publications and broadcast media that
prevent Counter-Plaintiffs from advertising their business and artwork." (Doc. 3,
at 22.)   Moreover, they have alleged Counter-Defendants have influenced CTSM
so that Counter-Plaintiffs cannot advertise the artwork on 'rolltide.com'."  (*Id.*)
Lastly, they allege that Counter-Defendants have blocked efforts for artwork of
Daniel A. Moore on commission with the U.S. Postal Service. (*Id.*)

      In making these allegations, Counter-Plaintiffs further allege that such
conduct was beyond their authority.  Viewing the facts in a most favorable light to

the Counter-Plaintiffs, this Court agrees.  Accordingly, President Witt and Dr.

Gaston's Motion to Dismiss Counter-Plaintiffs' claim for Intentional Interference

with Business Relations is due to be DENIED.

### C.  VARA (Count I of the Counterclaim)

The Counter-Plaintiffs have failed to meaningfully respond to Counter-

Defendant's Motion to Dismiss on this issue.  Moreover, it appears from the face

of the Act that, under 17 U.S.C. §106A(c)(3), reproductions, depictions,

portrayals, and electronic portrayals of original art works are expressly excluded

from the protection afforded to original pieces of art under VARA.  *See* 17 U.S.C.

101, 106A(c)(3).  Absent any response from Counter-Plaintiffs, President Witt and

Dr. Gaston's Motion to Dismiss this claim is due to be GRANTED.

### D.  The Alabama Deceptive Trade Practices Act ("ADTPA") (Count IV of the Counterclaim)

Likewise, Counter-Plaintiffs have failed to meaningfully respond to

Counter-Defendant's Motion to Dismiss on this issue as well.  Counter-

Defendants have contended that this claim should fail as a matter of law because

the preemption clause in VARA and its placement within the general preemption

provision of the Copyright Act evinces Congressional intent that VARA's

preemption should track that of  the Copyright Act.  (*See* Doc. 32, at 11.)  Absent

any response from Counter-Plaintiffs, the Court is inclined to agree.  President

Witt and Dr. Gaston's Motion to Dismiss this claim is due to be GRANTED.

**E.  Declaratory Relief for Rights under the Lanham Act, 15 U.S.C.§1051 *et seq*. (Count II of the Counterclaim)**

It appears to this Court that Counter-Plaintiffs' request for Declaratory Relief under the Lanham Act, outlined in Count II of the Counter-Plaintiffs' Counterclaim, is nothing more than a claim for relief.  If Daniel Moore and New Life Art, Inc. were ultimately to prevail in this action, then such relief is essentially unnecessary.  Accordingly, it is mere surplusage and President Witt and Dr. Gaston's Motion to Dismiss the claim is GRANTED.

## CONCLUSION

Thus, the Court finds that President Witt and Dr. Gaston's Motion to Dismiss Counter-Plaintiffs' § 1983 claims is due to be GRANTED.  Additionally, Counter-Defendants' Motion to Dismiss the claims for violations of the Visual Artists Rights Act, 17 U.S.C. § 106A, declaratory relief under the Lanham Act, § 15 U.S.C. 1051 *et seq*., and violations of Alabama Deceptive Trade Practices Act, § 8-19-1 *et seq*., are also to be GRANTED.  The Motion to Dismiss the counterclaim for Intentional Interference with Business Relations is due to be DENIED.

Done the 30th day of April, 2008.

U.W. Clemon
United States District Judge