FILED
2009 Sep-08  PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

**UNIVERSITY OF ALABAMA BOARD
OF TRUSTEES**

        **Plaintiff,**

**v.**                                  **CV 05-UNAS-PT-585-W**

**NEW LIFE ART INC., et al**

        **Defendants**

### MEMORANDUM OPINION

This cause comes on to be heard on the Motion for Summary Judgment filed by counterclaim defendants Robert Witt and Finus Gaston on June 11, 2008.  The Eleventh Circuit Court of Appeals (Eleventh Circuit) opinion and mandate determined that this court should consider this motion.[1]

This cause was reassigned to this judge on February 11, 2009.  On February 24, 2009, this court held a hearing by a recorded telephone conference.  At the hearing,  the parties agreed to attempt to stipulate pertinent facts so that all or some of the issues could be decided as matters of law.  That attempt was not successful.  At the suggestion of at least one side, this court thereafter awaited the opinion and mandate of the Eleventh Circuit Court of Appeals.  The mandate was filed on June 8, 2009.  This court set a briefing schedule and thereafter held a recorded hearing of oral arguments in open court on August 25, 2009.

---

[1]The court will hear motion(s) for summary judgment filed by the part(ies) with reference to the plaintiff's claims and defendants' declaratory judgment action if filed pursuant to this court's order filed on August 26, 2009.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to

submit a question to a jury merely because some evidence has been introduced by the party

having the burden of proof, unless the evidence be of such character that it would warrant the

jury finding a verdict in favor of that party.  *Id.* at 251 (*quoting Improvement Co. v. Munson*, 14

Wall. 442, 448 (1872)).  "This standard mirrors the standard for a directed verdict under Federal

Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under

governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.[2]

Issues Not Reached

There are a number of issues which this court will not reach with a decision.  These

include:

(1) Whether it is appropriate for Witt and Gaston to be joined as counterclaim defendants

when they are not plaintiffs in the original action?  This court does not detect any provision of

FRCP Rule 13, 19 or 20  which would allow Witt and/or Gaston to be joined as counterclaim

defendants.[3]

(2) Was a determination by the Eleventh Circuit that the district court did not abuse its

discretion in striking affirmative defenses foreclose further consideration of those defenses by

this newly assigned judge?  It may be that the appellate court was not saying that the district court

---

[2]*Also see Beard v. Banks*, 548 U.S. 521 (2006).

[3]While the claims in the complaint and the counterclaims are somewhat related, it is not clear that they arise out of the same transaction or occurrence that is the subject matter of the complaint.  The complaint relates to the alleged property rights of the plaintiff.  The counterclaims charge specific misconduct against Witt and Gaston.  The defendants claim that the individuals misbehaved regardless of any reasonably debatable basis for the plaintiff's claims.  Again, however, this court does not reach the issue.

ruling was correct and finally controlling; just that it was not then reversible.

(3) Is the 1997 Bryant Postal Service claim barred, among other reasons, because the defendants received pay in said matter?  Regardless, the defendants acknowledge that they do not insist on the 1997 Bryant Stamp Project as a part of their counterclaim.

(4) Does Moore, as an individual, have standing to be a party to the counterclaims?

(5) Whether the intentional interference claim is defeated because the parties had become competitors.

(6) Whether a general public statement on the argued effect of a dispute can constitute intentional interference with undesignated business relationship(s).

(7) Counterclaims dismissed by other judges.

(8) Whether any procedurally proper filed claim against Witt remains.[4]

Non-Issues

(1) At the August 25, 2009 hearing the defendants agreed that the claim against Witt based on events of 1997 and 2002 should be dismissed.  The only remaining claim against Witt relates to alleged intentional interference by virtue of statement(s) he made in 2005.[5]

(2) Defendants agree that the only claims that they have against either Witt or Gaston are intentional interference claims.

Issues to be Considered

(1) Should this court allow Gaston to assert statute of limitations defenses?

---

[4]The court assumes that the appellate court could consider any or all these issues in a *de novo* review.

[5]The statute of limitations would apparently not bar the only remaining purported claim against Witt based on a 2005 public statement.  It may be, however, that this purported claim against Witt is not asserted in any remaining pleading or the pretrial order; only in a brief.  The court does not reach the issue of whether this claim has been procedurally made.

4

(2) If the statute of limitations defense is considered, should Gaston prevail on the claims related to the1997 and 2002 incidents based on that defense?  Only incidents in 1997 and 2002 form the basis for counterclaims made against Gaston.

(3) Can a cause of action barred by the statute of limitations be reinstated against a party based upon a related party, not named in the counterclaim, bringing suit against the counterclaimants?

(4) Is there a maintainable action for intentional interference?

(5) Are Gaston and Witt immune from the counterclaims?

### Allowance of Statute of Limitations Defense

The defendants argue that since the affirmative defenses filed on June 10, 2008 have been stricken, the statute of limitations defense should not be allowed.  The pretrial order, the Eleventh Circuit opinion and, perhaps, controlling case law[6]  lead this court to a different conclusion. This

---

[6]*Romar Dev. Co., Inc. v. Gulf View Mgt. Corp.*, 644 So.2d 462 (Ala. 1994) sheds some light on the issue although it deals with a counterclaim against an initially named plaintiff.   After discussing the related legal history of counterclaims, the court stated:

> Consistent with the foregoing discussion, the rules regarding permissive and compulsory counterclaims on which the limitations period has expired when the claimant's cause of action accrued may be stated as follows:
> (1) Compulsory counterclaims for money damages are not subject to statutes of limitations and permit recoveries in excess of the amount of the claim.
> (2) Because of the preceding rule, Ala.Code 1975, § 6-8-84, and  Ala.R.Civ.P. 13(c) apply only to permissive counterclaims.
> (3) A permissive counterclaim is subject to the statute of limitations defense, and, therefore, allows no recovery.

*Also see Exxon Corp. v. Dept. of Conser. and Nat. Resources*, 859 So.2d 1096 (Ala. 2002).

Since the counterclaims are not for recoupment, it may not be covered by Ala. Code 1975, § 6-8-84.  *See Campbell v. Regal Typewriter Co.*, 341 So.2d 120 (Ala. 1976).  The court notes that permissive counterclaims and set off counterclaims may be treated the same.  *See* Ala. Code 1975, § 6-8-85.

court concludes that, at best, the defendants' counterclaims are permissive and if they would be questionable as against an original plaintiff, they certainly are questionable as to originally non-named parties.

The pretrial order filed on June 10, 2008 includes the following statement: "Counter Defendants Witt and Gaston assert that they are entitled to summary judgment based on the reasons set forth in their motion for summary judgment and supporting memorandum of law." The referenced motion for summary judgment was filed one day later (June 11, 2008).  It includes the following ground: "President Witt and Dr. Gaston are entitled to summary judgment because the statute of limitations bars counter-plaintiffs' intentional interference claim." Regardless of the one day delay, the defendants were clearly on notice of an intended motion for summary judgment and that it would state the reasons for entitlement.

The Eleventh Circuit opinion, which states that the striking of the affirmative defenses is a "close" issue, also states: "The Moore defendants should have known that Witt and Gaston would file a motion for summary judgment asserting the state agent immunity defense *and other defenses* ... ."  (Emphasis added).  The Eleventh Circuit remanded "for consideration of *the summary judgment motion*."  (Emphasis added).

The court further notes that, for some reason, the defendants, as late as May 19, 2008, filed Defendant/Counter Plaintiffs' Motion for Joinder.  Although it was stricken by the court, it suggests that there was some concern as to whether Witt and Gaston had been previously properly joined.  On May 28, 2008, only 13 days before the pretrial conference, the defendants

6

filed "Defendants-Counter Plaintiffs' Amended Counter Claim" which was also stricken. Unlike the initial counterclaims, this amended counterclaim refers to specific dates of alleged incidents.

Based on the foregoing discussion, the court will allow the statute of limitations defense to be considered.[7]

Should Gaston Prevail On
the Statute of Limitations Defense?

The 1997 and 2002 incidents complained of clearly fall outside the two year statute of limitations for intentional interference. Defendants' only argument opposing a bar of the purported counterclaims is that the limitations period began to accrue when the only named plaintiff filed the complaint in this case. The defendants have not cited any authority for this unlikely proposition. If that argument were to prevail, it would mean that an individual employee could never feel free of being sued as long as his employer might file a lawsuit.

This action was initially filed on March 28, 2005. At that time, the statute of limitations for intentional interference had already run as to Gaston. The issue is not whether there was tolling. The issue is whether a barred claim can be reinstated by the action of a third party. This court concludes that it cannot.

While the defendants have acknowledged that if the court concludes that the claims are barred by the statute of limitations, the claims against Gaston should be dismissed, the court will address other issues.

---

[7]If the Eleventh Circuit opinion affirming the striking of affirmative defenses based on a determination that the district court did not abuse its discretion is not the law of the case, this court would , in any event, allow the statute of limitations defense.

Are Witt and Gaston Entitled to State Law Immunity?[8]

"A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: (a) making administrative adjudications; (b) allocating resources; (c) negotiating contracts; (d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute , rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

---

[8]While the court doubts that the defendants have proved a *prima facie* interference claim, it will discuss immunity.   If interference with business relations and interference with contracts are two separate torts, the substantial evidence is the same as to both.

8

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).

Burden:

In order to claim state-agent immunity, the defendants "bear the burden of demonstrating that [the plaintiff's] claims arise from a function that would entitle them to immunity."[9]  If a defendant is able to make such a showing, the burden shifts to the plaintiff to establish that the defendant acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003).

Actions beyond defendant's authority

A state employee might act beyond the scope of his authority by "fail[ing] to discharge duties pursuant to detailed rules or regulations , such as those stated in a checklist.*"  Ex parte Butts,* 774 So.2d 173, 178 (Ala. 2000); *see also Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003).[10]

In *Ex parte Reynolds*, plaintiff sued employees of the Alabama Department of Transportation ("ALDOT"), alleging that they negligently had failed to inspect, maintain, and repair the area of Highway 82 where plaintiff was injured in a car accident.  Plaintiff argued that defendants were not entitled to state-agent immunity because they "failed to maintain the road in

---

[9]It is clear that Witt and Gaston have met this burden.

[10] The defendants have cited several cases which refer to failing "to discharge duties pursuant to written detailed rules or regulations such as those stated on a checklist."  There is no substantial evidence of any such "rules and regulations" as opposed to possible contractual terms.  In their July 2009 brief, the defendants state: "The UA/CTSM contract meets this element."  The court does not agree that it is either a rule or a regulation.  Defendants further state: "There were never any written policies ... ."

the manner prescribed in the [ALDOT] manuals." *Ex parte Reynolds*, 946 So.2d 450, 457 (Ala. 2006).  However, the court determined that although the manuals set out criteria and duties for the defendants to follow, their duty to inspect the highway "required formulating plans and policies, as well as exercising judgment in allocating resources for the inspections.  [They] then exercised judgment in actually undertaking to accomplish the necessary maintenance and repairs."  *Id*. at 458.  The court found that the type of decision-making undertaken by the defendants was protected under *Cranman's* state-agent immunity test.

Malice:

Legal malice, such as that level of malice requied to satisfy the elements of a malicious prosecution claim, "is not sufficient to defeat a state agent's defense of discretionary-function immunity."  *Ex parte Tuscaloosa County*, 796 So.2d 1100, 1107 (Ala. 2000).  Rather, the defendant's conduct must be "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith, by, for example, showing that the defendant had a personal ill will against the [plaintiff] and that he [acted] maliciously or in bad faith."  Id. (internal quotations omitted).[11]

Strangers to Relationship?

"After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered."  *Parsons v. Aaron*, 849 So.2d 932, 946 (Ala. 2002).  "One is not a *stranger* to the contract just because one is not a *party*

---

[11]This court does not agree that just evidence of becoming angry during negotiations constitutes "personal ill will."  There is no substantial evidence that either Witt or Gaston acted in a personal capacity or out of a personal motive as opposed to serving their employer.  *See Perlman v. Shurett*, 567 So.2d 1296, 1297-8 (Ala. 1990).

to the contract." *Bellsouth Mobility, Inc. v. Cellulink, Inc.*, 814 So.2d 203, 212 (Ala. 2001)

(quoting *Atlanta Market Ctr. Management Co. v. McLane*, 503 S.E.2d 278, 282 (1998)).

"[W]hen tripartite relationships exist and disputes arise between two of the three parties,

then a claim alleging interference by the third party that arises from conduct by the third party

that is appropriate under its contract with the other two parties is not recognized." *Colonial Bank*

*v. Patterson*, 788 So.2d 134, 138 (Ala. 2000).  In that case, business partners Patterson and

Nordness opened a business account at Colonial Bank.  When the business declined and

Nordness informed Patterson that the business could no longer afford to pay either of them a

salary, Patterson began paying his own salary using counter checks on the account at Colonial.

When Nordness discovered this, he removed Patterson's name from the account, using standard

procedures.  Colonial thereupon refused to honor Patterson's counter check.   Patterson sued

Colonial for intentional interference with business relations, alleging that Colonial was involved

in helping Nordness push Patterson out of the company.  Based on the rule quoted above, the

court rendered judgment for Colonial.

In *Bama Budweiser v. Anheuser-Busch*, 611 So.2d 238 (Ala. 1992), Schilleci (plaintiff's

owner) bought two Anheuser-Busch wholesale businesses from Daniel.  They executed an

agreement for Schilleci to buy the businesses from Daniel contingent on Anheuser-Busch's

approval of Schilleci as a wholesaler.  Anheuser-Busch approved, and the businesses, one of

which serviced all of Montgomery County, passed to Schilleci.  Later, Anheuser-Busch altered

another wholesaler's exclusive sales territory to include part of Montgomery County.  Schilleci

thereupon sued Anheuser-Busch, alleging tortious interference with Schilleci's contract with

Daniel.  The Supreme Court of Alabama upheld the trial court's entry of summary judgment for

Anheuser-Busch, in part on grounds that Anheuser-Busch was a *party* to the contract between Daniel and Schilleci, because "the transfer of [the wholesale business] from Daniel to Schilleci required Anheuser-Busch's approval, without which the transfer could not be completed.  Absent Anheuser-Busch's consent and affiliation, neither Schilleci nor Daniel could market or sell Anheuser-Busch products."  *Id.* at 247.  Because a "party to a particular contract cannot, as a matter of law, be liable for tortious interference with that contract," judgment for Anheuser-Busch was appropriate.  *Id.*

In *Waddell & Reed v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1154-55 (Ala. 2003), the Supreme Court of Alabama held that "in order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract."  The court relied on a Georgia case in reaching this rule: the Georgia court reasoned that "'all parties to a comprehensive interwoven set of contracts which provided for the financing, construction, and transfer of ownership'" were not strangers, i.e., the purchaser of a radio station was not a stranger to the contractual relations between the radio station's seller and the seller's lenders."  *Id.* at 1154 (quoting *Jefferson-Pilot Comm. Co. v. Phoenix City Broadcasting*, 421 S.E.2d 295 (1992)).[12]

Conclusion

The court concludes that Witt and Gaston are entitled to state-agent immunity and that, in any event, defendants have not submitted substantial evidence of intentional interference.  The evidence is overwhelming that Witt and Gaston were acting withing the scope of their authority.  There is no substantial evidence that they acted willfully, maliciously, fraudulently, in bad faith,

---

[12]*Also see MacEast, LLC v. Shoney's*, 535 F.3d 1293 (11th Cir. 2008).

beyond their authority or under a mistaken interpretation of the law.  Witt as president of the

University and Gaston as designated employee of the athletic department were merely

discharging their duties and exercising their judgment as required by their positions at the

University.  The court concludes that they are entitled to state law immunity on all counterclaims.

Further, Witt and Gaston certainly were not strangers to the agreements at issue or the

circumstances surrounding those agreements.  Because of the foregoing, Witt and Gaston are

entitled to summary judgment on the claim for intentional interference, the only remaining

counterclaims in this case.[13]

The court concludes that the motion(s) for summary judgment will be granted.[14]

Filed this the 8th day of September, 2009.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[13] Even though it may not be a significant factor the defendants have cited cases referring to "justification" for interference with business relations as an affirmative defense.  If there has been no intentional interference, there is no need for justification.  In any event, it would appear that the Eleventh Circuit has allowed consideration of matters integral to immunity.

One of the judgment type concerns of the counter defendants as stated in defendants' brief was whether the painting of eligible players might cause problems with the NCAA and the SEC.  Defendants' brief states: "That issue and the First Amendment issue created an irreconcilable business resolution." Defendants' suggestion that Witt characterized Moore as a "thief" is an attempted stretch of the evidence.   The substantial evidence is that, other than for the business disagreement, the defendants had a good relationship with Witt and Gaston.   *Compare White Sands Group, LLC v. PRS II, LLC*, No. 1080312 (Ala. 9-4-09).  The court, however, should not confuse the elements of an intentional interference claim with the issue of when state agent  immunity applies.  It may be inconsistent for the defendants to join Witt and Gaston as counterclaim defendants and then argue that they are "strangers."

[14]This portion of the case has been around too long.  The court will enter a final judgment pursuant to Fed. R. Of Civ. P. 54(b).