FILED
2009 Sep-25 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, a public corporation,<br>    Plaintiff-Counter-Defendants,<br><br>v.<br><br>NEW LIFE ART, INC. and DANIEL A. MOORE,<br>    Defendants-Counter-Plaintiffs. | CIVIL ACTON: 05-B-0585-W |

## DEFENDANTS' RESPONSE IN OPPOSITION TO "STATEMENT OF FACTS IN SUPPORT OF THE UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT"

The separate designated "Statement of Facts In Support of the University's Motion for Summary Judgment" is not undisputed. The History of the University's Marks set forth in paragraph 1 thru 23 have been editorialized but the Defendants do not oppose the basic recognition that the University does possess some rights in some marks under a non-art image context as attached to the "certain" specific agreements between these parties in the past. However, the existence of this history is not material to the disputes at issue as addressed in Defendant's Opposition to the Motion for Summary Judgment.

The History of New Life's Products set forth in paragraph 24 thru 31 is not undisputed. Defendants do not agree that this art uses the color / trade dress of the University <u>solely</u> "to capture the emotions of Alabama football fans." This art is expressive and layered with messages. (See Report of Kathleen Spies, PhD) Defendants do not agree that they are "able to sell its products largely due to the fact that its works closely reproduce the University's indicia." (¶ 27) This is art the University likes, its fans like and consumers buy because of its "hallmarked style" and the talents of this artist is expressing creative, historic, visual comments on inspirational moments. This art does much more than simply allow fans to "bask in reflected glory." It comments on our culture and simply includes colors / trade dress in artistic relevance to the scene described and commented upon. (See report of Kathleen Spies, PhD.)

The History of Parties Licensing Relationship found in paragraph 32 thru 51 is correct only in the quoted portions set forth from the agreements. Those agreements were limited by their language to "the manufacture, distribution and sale of <u>certain</u> products..." (Emphasis added.) (See Exhibit H to Declaration of Finus Gaston submitted by Plaintiff) Copyright was always retained by Defendants as shown in Defendants' Brief in Opposition. The specific and certain agreements did not abrogate Defendants' copyright privileges on issuing new and different products in

different format, size and media for their copyright images. None of the agreements involved the licensing of any marks used or descriptive elements in artistic relevance to the image area. No language has been cited by the Plaintiff that could abrogate or alter the artist's right to free speech, freedom of the press and "fair use". No license was required for such use in the protected image area and such use was not addressed because of the known and admitted dispute on this issue. It is undisputed that the University knew of this dispute, that it was not addressed in these agreements and that they sought to get a new and broader agreement which Defendants refused to accept. Moore did not want to be told what he could and could not paint. (Deposition of Finus Gaston, Vol. I, p. 189-191) The University kept promoting Defendants because they were in hopes of getting a new agreement. (Deposition of Finus Gaston, Vol. II, p. 176) This would require the Defendants to relinquish their First Amendment claim to the image area. (Deposition of Finus Gaston, Vol. II, p. 180) The image area dispute was the "bottom line". (Deposition of Finus Gaston, Vol. II, p. 214-215) Without relinquishment of First Amendment rights as insisted for a _new_ licensing agreement – the parties could not talk. (Deposition of Bill Battle, p. 203-204) The certificates issued for the agreed upon limited edition prints were limited to that size, format and medium with no restriction to the Defendants further, different use of their copyrighted image area.

The New Life's Position and Licensing Prior to 2000 Was Not Limited to the Use of University Indicia on the Border is inaccurate. The undisputed evidence is that Moore had always rejected any requirement to license his image area but always agreed to the requirement to license the use of indicia on the border of artwork. The issue that was never resolved by contract was always "the image area". (Deposition of Finus Gaston, Vol. II, p. 214-215)

> "Q. And had his (Moore) view ever changed about whether he needed to license the image are of his paintings?
> A. No.
> Q. It was always the same, wasn't it?
> A. It was." (Deposition of Finus Gaston, Vol. II, p. 173)

Moore always agreed he would license indicia on the border of prints. (Deposition of Finus Gaston, Vol. I, p. 177-178)

> "Q. Dr. Gaston, with your position as the representative of the University of Alabama that Daniel Moore and New Life Art were licensing the image of anything they painted and sold that showed university colors, marks in the art image itself, how would you reconcile that with the fact that Danny has told you for the past 25 years that he doesn't believe his image area has to be licensed?
> A. We disagree with that position." (Deposition of Finus Gaston, Vol. III, p 56-57)

\* \* \* \*

> "Q. And he has explained to you in the past why he has

        sought or agreed to licensing on some occasions and not others, hasn't he?
A.    He's taking the position that he's only tried to license things outside the image.
Q.    When he thinks that would be of value to the marketability or prestige of that particular work?
A.    That's the position he's taken." (Deposition of Finus Gaston, Vol. III, p. 59)

The correspondence between the parties confirm this beyond dispute. Defendants have never claimed ownership of the University's indicia only the artistic right to include the color / trade dress and elements of artistic relevance in a descriptive sense in the image area. The University's agents acknowledge that adding indicia to the border of prints can enhance its marketability. (Deposition of Noele Butler, p. 87-88; Deposition of Ken Gaddy, p. 41; Deposition of Bill Battle, p. 129)

Defendants dispute the section entitled New Life Exclusive Licensing Relationship except as stated in the letter to CLC on August 16, 2000. (See Exhibit O to Novak Declaration cited by Plaintiff.) Defendants have never refused to consider licensing when it is appropriate as shown by that letter. It was the University that made the unilateral "economic decision not to do business with New Life Art." (Deposition of Finus Gaston, Vol. I, p. 215)

        "Q.    So it's not true to say that he's the one that's refused to license, is it?
A.    He's made proposals to the University to license certain things." (Deposition of Finus Gaston, Vol. I,

p. 215-216)

Defendants dispute the credibility and relevance of the purported market survey limited to "The Gamebreaker" by Gerald Ford. (See previous Motion to Exclude filed by Defendants)

Defendants further dispute any requirement to pay any royalties for their products which show indicia in the image area except for the specific, certain limited edition made the subject of agreements as discussed in briefs. Defendants have not reissued these limited edition prints. (Deposition of Daniel Moore, Vol. IV, p. 190) Defendants have issued new products of different size, format and media of their own copyrighted images. (Deposition of Daniel Moore, Vol. IV, p. 165) Defendants dispute any formulaic claim for damages in these artworks. Paintings and images done throughout this relationship were not required to be licensed for the image area as set forth fully in the briefs filed herein. The Plaintiff's statement of facts, in its entirety, is not undisputed. The only issue in this case has been acknowledged by the Plaintiff to be a legal one: Is the descriptive, artistic relevance and message laden inclusion of this indicia protected by the First Amendment and "fair use"? The Plaintiff's statement of facts simply seeks to distract from the single issue that caused it to file this suit:

"A. And we felt the only way to determine whether our

position was valid or not versus Danny's position on trademark rights as it turned out is through the courts." (Deposition of Finus Gaston, Vol. II, p. 75)

The case is simply about a difference of opinion on the image area. (Deposition of Finus Gaston, Vol. II, p. 138; 214-215) (Bottom line) It was non-negotiable with the University and this suit was filed to get a black and white, legal answer. (Deposition of Bill Battle at p. 137; 155; 40-41;226-227)

s/Stephen D. Heninger
Stephen D. Heninger [ASB5227E68S]
Erik S. Heninger [ASB1189K46H]
Heninger Garrison Davis, LLC
P. O. Box 11310
Birmingham, Alabama 35202
(Telephone)      205.326.3336
(Facsimile)      205.326.3332
E-mail:      Steve@hgdlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay M. Ezelle, Esq.
Tabor R. Novak, III, Esq.
Walter W. Bates, Esq.
STARNES & ATCHISON, LLP
P. O. Box 598512
Birmingham, Alabama 35209

Jerre B. Swann
R. Charles Henn, Jr.
Richard R. Edwards
Kilpatrick Stockton, LLP
110 Peachtree Street, Ste. 2800
Atlanta, GA   30309-4530

Larry R. Bradford
BRADFORD & SEARS, P.C.
2020 Canyon Road, Ste. 100
Birmingham, Alabama 35216

                                                  s/Stephen D. Heninger
Stephen D. Heninger [ASB5227E68S]
Erik S. Heninger [ASB1189K46H]
Heninger, Burge, Vargo & Davis, LLP
2146 Highland Avenue
Birmingham, Alabama 35205
(Telephone)     205.933.2345
(Facsimile)  205.933.1616
E-mail:     Steve@hbvdlaw.com